IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA, | ) | Civil Action No. 3:05-124-22 |
| | ) | |
| Plaintiff, | ) | **ORDER AND OPINION** |
| | ) | **ON DEFENDANT'S** |
| v. | ) | **MOTION TO DISMISS** |
| | ) | |
| BULGARTABAC HOLDING GROUP, | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

This matter is before the court on motion of Defendant Bulgartabac Holding Group ("Bulgartabac") to dismiss, or for summary judgment, or, in the alternative, to quash service of summons and complaint pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(4), 12(b)(5), 12(b)(6), 12(c) and/or 56. For the reasons set forth below, Defendant's motion to dismiss is granted for lack of personal jurisdiction.

**BACKGROUND**

Plaintiff State of South Carolina ("State") filed this civil enforcement action in state court against Bulgartabac, a foreign company, on December 14, 2004 for violation of S.C. Code §§ 11-47-10 to 11-47-30, the South Carolina Tobacco Escrow Fund Act (the "Act"). Under the Act, a tobacco product manufacturer ("TPM") selling cigarettes in South Carolina must either become a party to the Master Settlement Agreement ("MSA"), or place funds in a qualified escrow account. State attempted substituted service of the summons and complaint on Bulgartabac via the South Carolina Secretary of State on December 16, 2004 in accordance with S.C. Code § 15-9-245. The Secretary of State, according to the affidavit of Jesseca Smith,[1] mailed the summons, complaint, court cover

_____

[1] Ms. Smith's affidavit, attached to Plaintiff's memorandum, attests that she is an employee of the Secretary of State's office.

sheet, and certificate of exemption by international air mail to Bulgartabac at 62 Graf Ignatiev Street,

1000 Sofia, Bulgaria.

In the complaint, State alleges that Bulgartabac manufactured cigarettes sold in South

Carolina, and that Bulgartabac is a TPM as defined in § 11-47-20(i).  State also alleges that

Bulgartabac manufactures cigarettes under the brands "Larson" and "First US," which were sold in

South Carolina in 2003.  It is undisputed that Bulgartabac has not joined the MSA or established a

qualified escrow fund.  State calculates that Bulgartabac, as a non-participating manufacturer, should

have deposited at least $13,845.56 into a qualified escrow fund by April 15, 2004 for sales in 2003,

and that it owes a civil penalty for not doing so.

Bulgartabac moves this court for dismissal for lack of personal jurisdiction and for

insufficiency of process, insufficiency of service of process, and for failure to state a claim upon

which relief can be granted.  Bulgartabac argues that it does not have sufficient contacts with South

Carolina to establish personal jurisdiction.  Furthermore, Bulgartabac argues that because State did

not comply with the service requirements of the Hague Convention, the complaint should be

dismissed under Fed. R. Civ. P. 12(b)(4) and 12(b)(5), or, in the alternative, service should be

quashed.  Bulgartabac also argues that dismissal or summary judgment is appropriate because it is

not a TPM within the meaning of the Act.

## DISCUSSION

### I.  Service

Bulgartabac argues that this action should be dismissed under Fed. R. Civ. P. 12(b)(4) and

(5) because State did not comply with the Hague Convention[2] in both form and manner of service

---

[2] Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965.

on Bulgartabac.  State does not purport to have served its complaint on Bulgartabac in accordance

with the Convention; rather State claims that service was proper under S.C. Code § 15-9-245(a), and

that the Convention is inapplicable.

Article 1 of the Hague Convention states that it applies "in all cases, in civil or commercial

matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."

20 U.S.T. at 362.  "This language is mandatory."  *Volkswagenwerk Aktiengesellschaft v. Schlunk,*

486 U.S. 694, 699 (1988).  By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention

pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies.

*Id.*  The Convention does not specify the circumstances in which there is "occasion to transmit" a

complaint "for service abroad,"  but the Supreme Court has concluded that if "the internal law of the

forum state defines the applicable method of serving process as requiring the transmittal of

documents abroad, then the Hague Service Convention applies."  *Id.* at 700.  The Court further

clarified that "the only transmittal to which the Convention applies is a transmittal abroad that is

required as a necessary part of service."  *Id.* at 707.

State argues that the applicable service statute in this case is S.C. Code § 15-9-245, entitled

"service of process on foreign corporation not authorized to do business in state."  This statute

applies to any such corporation that does "any business" in South Carolina "either itself or through

an agent."  § 15-9-245(a).  In order for § 15-9-245(a) to apply, it would be necessary to find that

Bulgartabac does business in South Carolina, either itself or through an agent.  Even assuming that

§ 15-9-245(a) applies to Bulgartabac, the statute itself requires "the transmittal of documents abroad"

as "a necessary part of service:"

> Service of the process is made by delivering to and leaving with the Secretary of
> State ... duplicate copies of the process, notice, or demand.  The Secretary of State
> *immediately shall cause one of the copies to be forwarded by certified mail*,

3

addressed to the corporation either at its registered office in the jurisdiction of its incorporation, its principal place of business in the jurisdiction, or at the last address of the foreign business or nonprofit corporation known to the plaintiff, in that order.

S.C. Code § 15-9-245(b) (emphasis added). By its own admission, the Secretary of State determined that the proper address under § 15-9-245(b) was 62 Graf Ignatiev Street, 1000 Sofia, Bulgaria, and mailed a copy of the summons and complaint to that address.[3]  Therefore, in following "the internal law of the forum state" service of process required "the transmittal of documents abroad" as "a necessary part of service" and the Hague Convention applies.  *Schlunk*, 486 U.S. at 700.  To the extent that State's attempt at service did not comply with the Hague Convention, service was not proper.

Even if service of process was not properly effected, the correct remedy would be to quash service without dismissing the case.  State would ordinarily be given a reasonable opportunity to attempt to effect valid service of process on Bulgartabac in a manner complying with the Hague Convention.  *Vorhees v. Fischer,* 697 F.2d 574, 576 (4th Cir. 1983).  "If the first service of process is ineffective, a motion to dismiss should not be granted, but rather the court should treat the motion in the alternative, as one to quash the service of process and the case should be retained on the docket pending effective service."  *Id*. (*citing Stern v. Beer,* 200 F.2d 794, 795 (6th Cir. 1952)).

However, because this court finds below that it must dismiss the action for lack of personal jurisdiction over Bulgartabac, it is not necessary to rule on the issue of service.

## II.  Jurisdiction

Bulgartabac contends that it does not have minimum contacts with South Carolina sufficient to give this court power to adjudicate this action under the South Carolina long-arm statute, S.C. Code § 36-2-803, or the due process clause of the Fourteenth Amendment.

---

[3] *See* affidavit of Jesseca Smith.

4

The plaintiff bears the burden of establishing an adequate basis for asserting personal jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). But when a court is making a jurisdictional determination based upon written motion of the parties, the plaintiff need only make a *prima facie* showing. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 396 (4th Cir. 2003). When raised in the context of a motion to dismiss, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676**.**

In evaluating whether personal jurisdiction may be asserted over a nonresident defendant, the court applies a two-step process. *Base Metal Trading, Ltd. v. OJSC,* 283 F.3d 208, 212 (4th Cir. 2002). First, the court must determine whether the forum state's long-arm statute provides a basis for exercising jurisdiction. *Id*. Second, the court must consider whether assertion of personal jurisdiction comports with the constitutional requirements of due process. *Id*.

In South Carolina, the long-arm statute has been interpreted to be coextensive with the constitutional limits of the Due Process Clause. *See Southern Plastics Co. v. Southern Commerce Bank*, 423 S.E.2d 128, 130-31 (S.C. 1992). Consequently, the two-step inquiry compresses into one: whether the due process requirements are met. *See Sonoco Prods. Co. v. Interplast Corp.*, 867 F. Supp. 352, 354 (D.S.C. 1994). *See also Kimbrel v. Neiman-Marcus,* 665 F.2d 480, 481 (4th Cir. 1981) (South Carolina long-arm statute seeks to assert jurisdiction, and South Carolina has the stated policy of extending by long-arm the jurisdiction of its courts to the farthest perimeter allowed by due process).

The due process test for personal jurisdiction has two related components: the minimum contacts inquiry and the fairness inquiry. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

5

286 (1980). Due process requires that a nonresident defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). In broad terms, the assertion of personal jurisdiction satisfies due process if "the defendant purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), invoking the benefits and protection of its laws, *Moosally v. W.W. Norton & Co., Inc*, 594 S.E.2d 878, 884 (S.C. App. 2004), such that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.

Overall, when determining whether the exercise of jurisdiction is reasonable in any given case, courts consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. *Base Metal Trading,* 283 F.3d at 213-14 (*citing Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)).

Personal jurisdiction over an out-of-state defendant may be either specific or general. A court exercises specific jurisdiction when a cause of action arises out of or is related to a defendant's activities within the forum state. *See* S.C. Code Ann. § 36-2-803; *Helicopteros Nacionales de Colombia*, *S.A. v. Hall*, 466 U.S. 408, 414 (1984). If, on the other hand, the suit is unrelated to a defendant's contacts with the forum state, the court exercises general jurisdiction. *See* S.C. Code Ann. § 36-2-802; *Helicopteros Nacionales*, 466 U.S. at 414. The threshold level of minimum contacts necessary to confer general jurisdiction is significantly higher than that required for specific jurisdiction. *See Helicopteros Nacionales*, 466 U.S. at 414 nn. 8-9. Accordingly, contacts that would not constitutionally justify an exercise of general jurisdiction might support an exercise of specific jurisdiction. *See Calder v. Jones*, 465 U.S. 783 (1984). The court addresses each form of jurisdiction below.

### A.  General Jurisdiction

To establish general jurisdiction, Defendant must have "continuous and systematic general business contacts" with the forum state.  These contacts must be "so substantial and of such a nature as to justify suit against [Defendant] on causes of action arising from dealings entirely different from those activities."  *International Shoe*, 326 U.S. at 318.

Plaintiff never directly addresses the distinction between general and specific jurisdiction. Plaintiff's arguments, however, suggest reliance only on specific jurisdiction.  Bulgartabac's contacts are, in any case, clearly insufficient to support general jurisdiction as they demonstrate no continuous or systematic general business contacts with the state.

### B.  Specific Jurisdiction

South Carolina's long-arm statute permits the exercise of specific jurisdiction over a person who "acts directly or by an agent as to a cause of action arising from the person's: (a) transacting any business in this State; (2) contracting to supply services or things in the State ... (h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed."  S.C. Code §§ 36-2-803(1), (1)(a), (1)(b) and (1)(h).  In addition, "only a cause of action arising from acts enumerated" in the above statute may be asserted against a defendant.  S.C. Code § 36-2-803(2).

The standard for determining whether a court may exercise personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with the forum state provide the basis for the suit. *Mitrano v. Hawes,* 377 F.3d 402, 406-407 (4th Cir. 2004).  If so, those contacts may establish "specific jurisdiction."  *Id.*; *Helicopteros Nacionales*, 466 U.S. at 414 & n. 8.  To decide whether specific jurisdiction exists, we examine (1) the extent to which Defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether Plaintiff's

7

claims arise out of those activities directed at the state; and (3) whether the exercise of personal

jurisdiction would be constitutionally reasonable." *Mitrano*, 377 F.3d at 407 (*citing ALS Scan, Inc.*

*v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 712 (4th Cir.2002)).  A defendant should be able

to anticipate being sued in a court that can exercise personal jurisdiction over it; thus, to justify such

an exercise of jurisdiction, a defendant's actions must have been "directed at the forum state in more

than a random, fortuitous, or attenuated way." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617,

625 (4th Cir. 1997).

### C.    Bulgartabac's Contacts

It is uncontroverted that Bulgartabac is a foreign company whose principal place of business

is 62 Graf Ignatiev Street, 1000 Sofia, Bulgaria.  According to its website, Bulgartabac is engaged

in the manufacture and export of cigarettes,[4]  and is a major cigarette producer in Eastern Europe.[5]

The company was established in 1947 and has been a holding company since 1993.[6]  Bulgartabac

operates nine enterprises in Bulgaria (Sofia, Plovdiv, Pleven, Blagoevgrad, Haskovo, Shoumen,

Stara Zagora, Asenovgrad and Vidin) and five plants in Russia, Ukraine and Romania.[7]  The total

production potential of the holding company is 60 billion filter cigarettes per year.[8]  On the webpage

labeled "brands,"[9] there are thirty-two different cigarette brands listed, none of which include "First

US" or "Larson."  The webpage dedicated to its cigarette trade states that the "main directions for

---

[4] http://www.bulgartabac.bg/aboutus.html (last visited May 24, 2005).

[5] http://www.bulgartabac.bg/cigarettes.html (last visited May 24, 2005).

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] http://www.bulgartabac.bg/c_brands.html (last visited May 24, 2005).

tobacco export of Bulgartabac companies, based in Bulgaria are as follows: Europe, The Near and The Middle East, Latin America, North America and Africa."[10]

Plaintiff has not alleged, and Bulgartabac has denied, that Bulgartabac has any office, officers, agents or employees in South Carolina, or that Bulgartabac advertises or markets in South Carolina.

Plaintiff's complaint makes the following allegations:  "the Defendant or its agent has been transacting business in this State, contracting to supply services or things in the State, or producing, manufacturing or distributing goods with the reasonable expectation that those goods are to be use (sic) or consumed in this State and are so used or consumed."  Complaint, ¶ 7.  The above general allegations merely mirror the language of South Carolina's long-arm statute itself, §§ 36-2-803(1)(a), (1)(b), and (1)(h).  In terms of specific allegations that might support jurisdiction, the complaint states that Defendant "manufactured the Larson and First US brand cigarettes which were sold in South Carolina in 2003," and that "records supplied to the South Carolina Department of Revenue show that at least 350,200 sticks of the Larson brand of cigarettes and 360,000 sticks of the First US brand cigarettes were sold in South Carolina in 2003."  Complaint, ¶¶ 9, 10.[11]  Plaintiff does not allege that Bulgartabac had any contact with purchasers or distributors in South Carolina, that it made any direct sales in South Carolina, or that it marketed or advertised its products in the state.

The complaint further alleges that Defendant, "as a first purchaser for resale or a successor to a manufacturer or first purchaser for resale of the Larson and First US brand cigarettes" was required to comply with the Tobacco Escrow Fund Act.  Complaint, ¶ 11.  Nowhere in the complaint

---

[10] http://www.bulgartabac.bg/t_cigarettes.html (last visited May 24, 2005).

[11] The total number of cigarettes allegedly sold in South Carolina by Bulgartabac is only .001% of its total production capacity of 60 billion.

or accompanying documents does Plaintiff offer any facts that support or explain the statement that Defendant is a "first purchaser for resale or a successor to a manufacturer or first purchaser for resale of the Larson and First US brand cigarettes."

The only specific connection with South Carolina alleged in the complaint consists of three letters Plaintiff claims the South Carolina Attorney General sent to Defendant in 2004, to which Defendant did not respond. Complaint, ¶ 15. Plaintiff filed no affidavits related to jurisdiction– the allegations above are all Plaintiff offers in support of jurisdiction over Bulgartabac.

### C.    The Tobacco Escrow Fund Act

Plaintiff's argument in favor of jurisdiction is essentially that the reach of the Act, S.C. Code §§ 11-47-10 to 30, extends personal jurisdiction over any party to whom the Act would apply. "The Act applies to *any* tobacco product manufacturer selling cigarettes to consumers *within the State -* whether through a distributor, retailer, or similar intermediary or intermediaries .... The Act is not triggered by a direct sale by the tobacco product manufacturer, but rather by the sale itself, by *any* person." *Memorandum of Law in Opposition to Defendant's Motion to Dismiss, or for Summary Judgment, or, in the alternative, to Quash Service of Summons and Complaint*, p. 11 (emphasis in original). The complaint allegations imply, without saying, that Bulgartabac sold cigarettes in South Carolina not directly, but through an unnamed distributor, retailer, or other intermediary.

Accepting this vague inference as true, and in the light most favorable to Plaintiff, it appears that Plaintiff seeks to substitute the broad reach of the Act for the requirements of the South Carolina long-arm statute and due process. Plaintiff's argument resembles a "stream-of-commerce" theory, which would stretch personal jurisdiction to any Defendant who, without more, manufactured a product that made its way into the stream of commerce in South Carolina. Even assuming that the Act applies to Defendant, this statute cannot, by itself, eviscerate the requirements of due process

10

and the long-arm statute. "The expansion of interstate commerce, while inducing acceptance of flexible due process standards, has hardly dictated the abandonment of all limits on personal jurisdiction." *Chung v. Nana Development Corp.* 783 F.2d 1124, 1126 (4th Cir. 1986).

### D.     Purposeful Activity

The "stream of commerce" concept, though considered, has never been adopted by the Supreme Court as the controlling principle for defining a state's reach of its judicial power. *ALS Scan, Inc.,* 293 F.3d at 713. A non-resident defendant may only be subject to personal jurisdiction under the stream of commerce theory if that defendant engaged in some activity purposely directed at the forum state. *Celotex Corp. v. Rapid American Corp.*, 124 F.3d 619, 629 (4th Cir. 1997). "The touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 945 (4th Cir. 1994). *See also Burger King,* 471 U.S. at 474 (minimum contacts must be "purposeful").

Plaintiff argues that the sale of 710,200 cigarettes in 2003 is "substantial enough and occurred long enough after the Act was enacted in 1999 for Bulgartabac to have reason to know that it would be subject to South Carolina law." Even if sales, representing only .001% of Defendant's yearly production capability, were substantial enough for Defendant to be aware that they were occurring in South Carolina, the Fourth Circuit has held that such knowledge is not enough to establish personal jurisdiction. "Foreseeability alone ... has never been a sufficient benchmark for personal jurisdiction under the due process clause." *Federal Insurance Co. v. Lake Shore, Inc.*, 886 F.2d 654, 658 (4th Cir. 1989). *See also Chung,* 783 F.2d at 1128 ("It is immaterial ... that [Defendant] knew of the ultimate destination of the shipment, since the foreseeability of injury in a distant forum is not the touchstone of minimum contacts.").

11

Jurisdiction must rest on a person's activity *deliberately directed* toward the forum state. *Lesnick,* 35 F.3d at 943-944 (emphasis in original). The defendant in *Lesnick* acknowledged that it had placed its product in commerce, and that it did so with knowledge that the product would be sold in Maryland, the forum state. Such knowledge, however, did "not rise to the level of establishing jurisdiction because none of the [defendant's conduct was] in any way directed *toward the state of Maryland*." *Id.* at 946-947 (emphasis in original). The court acknowledged that the result might be different if the defendant had changed production to comply with regulations of the forum state, or if it had set up a customer relations network there. *Id.* at 947. The court cited to Justice O'Connor's opinion in *Asahi* for guidance:

> But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Lesnick*, 35 F.3d at 945 (*citing Asahi*, 480 U.S. at 112 (O'Connor, J.)). "What is critical to the due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Lake Shore*, 886 F.2d at 658. Such reasonable anticipation is associated with a defendant's purposely availing itself of the forum state's laws. *Id.* Absent such purposeful contacts, "it is irrelevant that a defendant could foresee the likelihood that its product would arrive in the forum state." *Chung,* 783 F.2d at 1127.

The Fourth Circuit has found that when a non-resident defendant has no office in South Carolina, is not licensed to do business here, has no agents, employees or subsidiaries in the state, has no bank account, real or personal property in the state, and does not directly advertise or solicit customers in South Carolina, such defendant, even though it made sales to South Carolina residents (sales that were initiated by the customer) has not "purposefully availed" itself of the privilege of

12

conducting business in South Carolina. *Lake Shore,* 886 F.2d at 658-59. Factors that might make

a stream of commerce theory applicable include marketing and advertising a product in the forum

state, or a regular course of dealing that results in deliveries of multiple units into South Carolina

annually over a period of years. *Id.* at 660. No such factors have been alleged in this case.[12]

Thus, even though Bulgartabac may have been aware that its products would be sold in South

Carolina, its lack of conduct directed specifically at South Carolina makes jurisdiction in South

Carolina improper under a "minimum contacts" analysis. *Lesnick,* 35 F.3d at 945. Plaintiff has not

alleged any specific contacts Bulgartabac has with South Carolina that might serve as examples of

purposefully directed activity.[13] Plaintiff has not alleged that Bulgartabac had a single business

contact in South Carolina, or that it made so much as a phone call to South Carolina. For purposes

of a motion to dismiss, this court accepts all of Plaintiff's allegations as true, and resolves any

ambiguities in favor of the Plaintiff. However, this court cannot create allegations of purposeful

contact where Plaintiff has made none. "[Plaintiff] has not alleged more than the entry of

[Bulgartabac] products into the stream of commerce with the expectation that they would be

---

[12] Plaintiff's memo cites to a portion of Bulgartabac's website that describes the company as "the favored exporter of tobacco to companies all over the world – the USA, Germany, France, Russia, Egypt, Uzbekistan, etc." To the extent such statement exhibits a marketing effort directed at the United States, it is not specifically targeted to South Carolina. A defendant who focuses its activities generally on customers located throughout the United States and other countries, without focusing and targeting South Carolina, can not said to have "entered" South Carolina for purposes of establishing personal jurisdiction. *ESAB,* 126 F.3d at 625. *See also Chung,* 783 F.3d at 1128 (corporation seeking to create interstate business by its own endeavors should be subject to suit wherever it extends its reach; however, it is equally necessary to protect an enterprise which has not made direct efforts, but rather sells its product to direct purchasers in its home state).

[13] The letters sent to Bulgartabac by the South Carolina Attorney General do not suffice. "The significant contacts considered are those actually generated by the defendant. It is firmly established that 'the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.'" *Chung,* 783 F.2d at 1127 (*citing Hanson,* 357 U.S. at 253).

13

purchased in [South Carolina]. Critically, [Plaintiff's] complaint is wholly devoid of any allegations that [Bulgartabac] engaged in any activity purposefully directed at [South Carolina]." *Celotex,* 124 F.3d at 629 (finding the lack of such allegations to be fatal to the plaintiff's attempt to establish personal jurisdiction).[14]

### E.     Reasonableness

Even if a defendant is found to meet the initial test of minimum contacts, a court must still determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Lesnick,* 35 F.3d at 945. The lack of overall reasonableness in the assertion of personal jurisdiction constitutes an independent ground for dismissal under Fed. R. Civ. P. 12(b)(2). *Lake Shore,* 886 F.2d at 661.

> To permit a state to assert jurisdiction over any person ... whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism. Such a rule would subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the defendant, making it impossible for defendants to plan and structure their business contacts and risks.

*Lesnick,* 35 F.3d at 945.

Overall reasonableness depends on several factors, including the burden on Defendant, the interests of the forum state, and Plaintiff's interest in obtaining relief in the forum. *Lake Shore,* 886 F.2d at 661. The burden Bulgartabac would encounter in defending this action is quite substantial. Bulgartabac would have to cross not only many time zones and national boundaries, but also a significant language barrier. Such difficulty is evident in a reading of the deposition of Boiko

---

[14] Both South Carolina Rule of Civil Procedure 8(a) and Federal Rule of Civil Procedure 8(a) require a complaint to contain "a short and plain statement of the grounds" upon which the court's jurisdiction depends.

14

Kishkov, taken by telephone and through a Bulgarian interpreter in a similar action in Missouri.[15]

Other witnesses and relevant evidence are likely located in Bulgaria. On the other hand, though the

interest of the State of South Carolina in upholding its own statutes is important, the amount of

money Plaintiff seeks to recover is not substantial when compared to the cost of international travel

and translation. Furthermore, inferring from Plaintiff's allegations that Bulgartabac's products were

sold in South Carolina through some intermediary, it makes more sense for Plaintiff to pursue such

entity. Having made direct contact with the state and purchasers in the state, such an intermediary

would be better positioned to control the sale of tobacco products in South Carolina and is in a better

position to "make substantial changes in [its] advertising and marketing practices and corporate

culture, with the intention of reducing underage smoking" in South Carolina. *See* S.C. Code § 11-

47-10, Editor's Note (e).

        For the reasons set forth above, the court concludes that not only has Bulgartabac not

purposefully directed activities at South Carolina, but also that exercise of jurisdiction over

Bulgartabac would offend traditional notions of fair play and substantial justice. Therefore, due

process prevents this court from exercising personal jurisdiction over Bulgartabac.

        Because this court finds that it must dismiss the action for lack of personal jurisdiction, it is

not necessary to rule on the issue whether Bulgartabac is a TPM pursuant to the Tobacco Escrow

Fund Act.

---

[15] The transcript is attached as item 3 to Defendant's Notice of Filing.

15

## CONCLUSION

For the reasons set forth above, Bulgartabac's motion to dismiss is granted.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie

CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
May 24, 2005

C:\temp\notesFFF692\~4010794.wpd